**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **JOSE MAGANA ZAVALA,** **Movant,** | **CRIMINAL NO.** **1:07-CR-0279-31-CAP-GGB** |
| v. | **CIVIL ACTION NO.** **1:11-CV-03836-CAP-GGB** |
| **UNITED STATES OF AMERICA,** **Respondent.** | **MOTION TO VACATE** **28 U.S.C. § 2255** |

## FINAL REPORT AND RECOMMENDATION

Jose Magana Zavala ("Zavala") has filed a motion to vacate sentence under 28 U.S.C. § 2255 (Doc. 1944). Zavala seeks to challenge the constitutionality of his 384-month sentence that was imposed on September 17, 2009, following a jury verdict on June 22, 2009 of guilty of conspiracy to possess with intent to distribute controlled substances, using a firearm in furtherance of a crime, and money laundering. (Doc. 1449). Presently before the Court for consideration are: (1) Zavala's § 2255 motion to vacate (Doc. 1944); and (2) the United States of America's (hereinafter "Government") response to Zavala's motion to vacate (Doc. 1976).

## I. FACTS

After a jury trial, Zavala was convicted of conspiring to possess with intent to distribute cocaine (Count One), conspiring to launder money (Count Twenty), and possessing a firearm in furtherance of a drug trafficking offense (Count Six). (Doc. 1269).

As set forth in the pre-sentence report ("PSR"),[1] Zavala guarded a drug money stash house (a residence used for warehousing controlled substances or proceeds). On December 6, 2007, Zavala was arrested at that stash house where law enforcement agents found $2,847,979 in drug proceeds and six ledgers documenting drug transactions. At the time of his arrest, Zavala was sleeping with a handgun within his reach. PSR, ¶¶ 33ee, 34d. Zavala told the agents that he had been in the house for only four days. (Doc. 1602 at 3).

The stash house that Zavala guarded was part of a conspiracy involving at least 46 participants. PSR ¶ 32. The conspiracy operated through "cells" that received cocaine from Mexico, supplied cocaine to mid-level distributors, retrieved drug

---

[1] While Zavala objected to the amount of drugs attributed to him in the PSR, he did not dispute the facts set forth in the PSR and repeated in this Report and Recommendation. The district court adopted the portions of the PSR to which there had been no objections. (Doc. 1602 at 2-3).

proceeds from mid-level distributors and took the drug proceeds to transporters for return to Mexico. Each mid-level distribution cell operated independently and consisted of at least one participant and one stash house. Many stash houses were equipped with firearms to provide protection for the drugs and/or drug proceeds. During the course of the conspiracy, the participants within each cell maintained ledgers documenting the receipt and sale of drugs and money. PSR ¶¶31-32.

The ledgers retrieved at the stash house where Zavala was arrested showed that stash house to be associated with over $113,838,928 in proceeds traceable to cocaine sales, an amount of money consistent with the distribution of 6,153.45 kilograms of cocaine. PSR ¶ 62. Another stash house operated by the cell to which Zavala was connected was associated with distributing 7,126 kilograms of cocaine between March 2007 and December 2007. PSR ¶ 59.

To avoid double counting, the PSR attributed 7,126 kilograms of cocaine to Zavala, resulting in a base offense level of 38 pursuant to U.S.S.G. § 2D1.1(c)(1). PSR ¶ 69. Two levels were added for the money laundering conviction, resulting in an adjusted offense level of 40. PSR ¶¶ 71, 75.

Zavala's attorney argued that his base offense level should be calculated by dividing the $2,847,979.00 found at the house of his arrest by $19,000 (the alleged

3

price per kilo of cocaine) resulting in a base offense level of 36, rather than 38. PSR, p. 31. Zavala's attorney also argued that the Court should give Zavala a 4-level reduction for a minimal role pursuant to U.S.S.G. § 3B1.2. PSR, p. 32.

At sentencing, the district judge discussed, but rejected Zavala's counsel's argument as to the calculation of the drug quantity. The district judge accepted the sentencing guideline calculation of the PSR. (Doc. 1602 at 3-5). The court also rejected Zavala's arguments that he should be given a reduction for minimal role in the offense and that mandatory minimum sentences were unconstitutional. (Doc.1602 at 7-9).

Zavala had a criminal history category of III, resulting in a custody guideline range of 360 months to life as to Counts One and Twenty and 60 months as to Count Six. The district court departed downward from the sentencing guidelines in sentencing Zavala to 324 months on Count One. In addition to the 324 months' imprisonment on Count One, Zavala was sentenced to 240 months' imprisonment on Count Twenty, to be served concurrently with Count One, and 60 months' imprisonment on Count Six, to be served consecutively to the sentences on Counts One and Twenty, for a total sentence of 384 months in prison. (Doc. 1449; Doc. 1602 at 17).

4

Zavala appealed to the Eleventh Circuit Court of Appeals, challenging the validity of a search and the constitutionality of statutory minimum sentences. (Doc. 1976-2). The Eleventh Circuit rejected Zavala's claims and affirmed his conviction. (Doc. 1877); United States v. Zavala, 408 F. App'x 319 (11th Cir. 2011). On November 4, 2011, the clerk docketed Zavala's § 2255 motion which was timely filed within one year of the final judgment against Zavala. (Doc. 1944).

Additional facts are discussed in context below.

## II. DISCUSSION

In the memorandum in support of his § 2255 petition, Zavala argues that:

A. the evidence was insufficient to convict him and he is innocent of the drug conspiracy and money laundering crimes;

B. the district court denied him due process when it allegedly failed to make individualized findings as to the drug and money amounts attributable to him; and

C. counsel was ineffective at trial and on appeal.

(Doc. 1944 at 16-21).

### A. Zavala's claims of insufficient evidence and innocence are procedurally barred.

Although Zavala states that he is innocent of the crimes of participating in a drug distribution conspiracy and money laundering, he does not contest the

5

underlying facts that he was found sleeping with a firearm within his reach at a drug stash house where $2,847,979 in drug proceeds and drug ledgers were found. He also does not contest the evidence that the stash house where he was arrested was part of a larger drug distribution conspiracy. Zavala's argument in effect is that this evidence was insufficient to convict him because he was only at the stash house for four days and there was no other evidence connecting him to the broader drug distribution conspiracy.

Generally, a petitioner must advance an available challenge to his conviction on direct appeal, or else this Court must consider the challenge procedurally barred in a § 2255 proceeding. Mills v. United States, 36 F.3d 1052, 1055-56 (11th Cir. 1994). "[Zavala] can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, Zavala must show cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error." Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir. 2004) (citing Bousley v. United States, 523 U.S. 614, 622 (1998)). "Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if 'a constitutional violation has

6

probably resulted in the conviction of one who is actually innocent.'" Lynn, 365 F.3d at 1234-35 (quoting Mills, 36 F.3d at 1055).

"[T]o show cause for procedural default, [Zavala] must show that some objective factor external to the defense prevented [Zavala] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [Zavala's] own conduct." Id. at 1235 (citing Smith v. Jones, 256 F.3d 1135, 1145 (11th Cir. 2001)). "Actual prejudice" requires Zavala to show that the alleged error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Reece v. United States, 119 F.3d 1462, 1467 (11th Cir. 1997) (citation omitted).

Alternatively, Zavala may still avoid the procedural bar by showing that the failure to address the alleged error would result in a fundamental miscarriage of justice, meaning that "the alleged error has probably resulted in the conviction of one who is actually innocent." Jones v. United States, 153 F.3d 1305, 1308 (11th Cir. 1998). "[A]ctual innocence means factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623. Accordingly, Zavala must establish that "in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted him." Id.

Zavala has pointed to no new evidence that would establish his innocence. The evidence of Zavala's presence with a gun in a stash house for drug proceeds along with the evidence of the broader conspiracy was sufficient for a reasonable juror to convict him. He has shown no basis to avoid the general rule that he is procedurally barred from raising in this petition the alleged insufficiency of the evidence, a claim that could have been raised on direct appeal.

**B.      Zavala is also procedurally barred from arguing that the district court violated his due process rights at sentencing.**

Zavala argues that the district court denied him due process at sentencing when it allegedly failed to make individual, particularized findings as to the drug and money amounts attributable to him. For the reasons discussed above, this claim is also procedurally barred.

In any event, the district court did consider defense counsel's argument that the drug quantity attributable to Zavala should be based only on the amount of money found at the stash house where he was arrested. However, the district court rejected that argument and sentenced Zavala on the basis of drug quantity distributed by the drug distribution cell to which Zavala was connected. The district court specifically

8

found that Zavala's role was essential and integral to the overall conspiracy. (Doc. 1602 at 7).

### C. **Zavala's counsel was not ineffective.**

Zavala argues that his counsel was ineffective at trial and on appeal because he failed to: (1) argue strenuously that Zavala was innocent; (2) move for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure; and (3) object to the amount of drugs attributed to Zavala for sentencing purposes and subsequently failed to raise the issue on appeal.

The Supreme Court precedent applicable to ineffective assistance of counsel claims was set forth in Strickland v. Washington, 466 U.S. 668, 698 (1984). To make a successful claim of ineffective assistance of counsel, a petitioner must show that: (1) his counsel's performance was deficient; and (2) that the deficient performance prejudiced his defense. Strickland, 466 U.S. at 697. A petitioner must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. The court must be "highly deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. To make such a showing, a petitioner must demonstrate that "no competent counsel

9

would have taken the action that his counsel did take." United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003) (quotation omitted). In order to meet the second prong of the test, the petitioner must demonstrate that counsel's unreasonable acts or omissions prejudiced him. That is, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

### 1. Zavala's counsel did argue that Zavala was innocent.

Zavala's claim that his counsel failed to argue that he was innocent is contradicted by the record. Zavala's counsel argued repeatedly to the jury that the evidence against his client was insufficient to convict him. He emphasized that despite the existence of extensive wiretap recordings, the government did not have a single recording of Zavala speaking or that mentioned Zavala. He also highlighted that Zavala's fingerprints were not found on any of the money or drugs, and that Zavala was not mentioned in any ledger or other document. (Doc. 1582 at 1295-1310). Thus, this claim of ineffective assistance is without merit.

### 2. Zavala's counsel moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29 at the close of the Government's case.

Zavala is incorrect in his argument that his counsel failed to move for judgment of acquittal at the end of the Government's case. At the close of the Government's case, Zavala's counsel made a Rule 29 motion, arguing:

> [Zavala] is on none of the calls, none of the ledgers, no one saw him, and [the Government's] own witnesses say that it is in these drug folks' incentive to keep folks out of the loop. There is no evidence that he ever gained their trust, which is what their cooperator says has to happen before he can join the conspiracy.
>
> We have all been sitting here for a week and a half. He is on none of this evidence. We don't think the evidence on the three remaining counts is sufficient to go to a jury and we would ask the Court to dismiss them pursuant to Rule 29.

(Doc. 1581 at 1112-1113). The district court denied the motion. (Id. at 1113). Thus, Zavala's claim for ineffective assistance of counsel regarding the alleged failure to move for judgment of acquittal should be denied.

### 3. Zavala's counsel was not ineffective for failing to argue at sentencing and on appeal that the district court erred in arriving at the drug amount used to calculate Zavala's guideline offense level.

Zavala argues that his counsel was ineffective because he did not raise at sentencing or on appeal that the district court erred in arriving at the amount of drugs attributed to him for purposes of calculating his sentencing guidelines offense level.

11

Zavala argues that his counsel should have argued that the district court should have held him responsible only for the quantity of drugs reasonably foreseeable to him, and that amount should have been determined by reference to the four days that Zavala claims that he was present at the stash house.[2] Zavala calculates that amount to be 1.5789 kilograms.

The method by which Zavala arrives at this amount is set forth in a "Conspiracy Time Line" that he prepared and appended to his memorandum in support of his § 2255 petition. In that document, Zavala writes that the money involved in the conspiracy was $2,847,979 over thirteen months, which equates to $219,075.31 per month, and $7,302.51 per day. He then multiplies $7,302.51 times 4 (the number of days he alleges he was at the stash house) to arrive at $29,210.04. He then divides $29,210.04 by $18,500 (the alleged price per kilogram of cocaine) to arrive at 1.5789 kilograms of cocaine. He then asserts that this amount of cocaine would have resulted in an offense level of 26 which calls for a sentencing range of 70-87 months. (Doc. 1944, p. 21).

---

[2]As previously discussed, counsel did object at sentencing to the drug amount, although counsel's proposed method of calculating the drug quantity differs from Zavala's suggested method here. (Doc. 1602 at 3-7). The district court rejected counsel's argument.

12

Zavala provides no authority that his calculation was a required (or even an acceptable) method of arriving at the drug quantity for which he was responsible. A co-conspirator may be held responsible for the reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that the conspirator jointly undertook. U.S.S.G. § 1B1.3(a)(1). Zavala contends that he was at the drug stash house for only four days. Even if Zavala participated in the conspiracy for only four days (which does not necessarily follow from his statement that he was at the house for four days), the number of days Zavala participated in the conspiracy does not necessarily relate to the amount of contraband that was reasonably foreseeable to him. The district judge had sufficient basis to conclude that Zavala was an integral member of his cell which was accountable for 7,126 kilograms of cocaine. At the very least, the district court had sufficient basis to conclude that (1) it was reasonably foreseeable to Zavala that the money he was guarding during his four days at the stash house, $2,847,979.00, was attributable to the drug activity of the drug distribution cell that Zavala joined; and (2) that amount of money corresponded to more than 150 kilograms of cocaine (using a price of $18,500.00 per kilo). Any amount of cocaine greater than 150 kilograms has a base offense level of 38. U.S.S.G. § 2D1.1. Thus,

13

the district court properly used a base offense level of 38,[3] and Zavala's attorney was not required to argue otherwise in order to provide effective assistance.

Accordingly, Zavala has not shown that his counsel's failure to raise this novel and unsupported method of calculating the drug quantity involved in the offense was ineffective or prejudicial.

## III. **CERTIFICATE OF APPEALABILITY**

According to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. §2253(c)(2), a certificate of appealability shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A prisoner satisfies this standard by demonstrating that reasonable jurists would find that the district court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See

---

[3]Even if the district court had found that Zavala's base offense level was 36 instead of 38 (by dividing the $2,847,979 found in the house by the higher price of $19,000 per kilo of cocaine), resulting in a total offense level of 38, instead of 40, Zavala's advisory guideline range, with a criminal history category III, would have been 292-365 months. Zavala's sentence would have been in the middle of that range.

14

Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Zavala has failed to make a substantial showing of the denial of a constitutional right. Accordingly, **I RECOMMEND** that a certificate of appealability be **DENIED**.

## IV. CONCLUSION

Based on the foregoing, **I RECOMMEND** that Zavala's motion to vacate sentence (Doc. 1944) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that a certificate of appealability be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral to me.

**IT IS SO RECOMMENDED**, this 18th day of September, 2012.

*Gerrilyn G. Brill*
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)